IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 29 2006

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

KATHARINE KENNEDY, DANIEL
WAGGONER, and ANNE KEATING,

        Plaintiffs,

v.

AVONDALE ESTATES, GEORGIA, a
Municipal Corporation,

        Defendant.

CIVIL ACTION NO.
1:00-CV-1847-JEC

## ORDER & OPINION

This case is presently before the Court on Plaintiffs'
Preliminary Motion for Reasonable Attorneys' Fees and Costs [97] and
plaintiffs' Motion for Attorneys' Fees and Expenses [99].  The Court
has reviewed the record and the arguments of the parties and, for the
reasons set out below, concludes that Plaintiffs' Preliminary Motion
for Reasonable Attorneys' Fees and Costs [97] should be **DENIED as
moot** and plaintiffs' Motion for Attorneys' Fees and Expenses [99]
should be **DENIED without prejudice.**

AO 72A
(Rev.8/82)

**BACKGROUND**

Plaintiffs now seek attorneys' fees and costs because they ultimately prevailed on a few challenges that they made to the City of Avondale Estates' ("Avondale") sign ordinance.[1]   Plaintiffs, residents of Avondale at the time, challenged the City's sign ordinance as being in violation of the First Amendment and Equal Protection Clause of the United States Constitution.  At the time this action was first commenced, in July of 2000, Avondale's sign ordinance banned all signs in residential areas, except for house numbers, historic markers, original house designations, and street identification numbers. (*See* Order [90] at 3.)

By the time of this Court's March 31, 2005 Order, Avondale had amended its sign ordinance five times--on November 8, 2000, November 26, 2001, November 25, 2002, September 22, 2003, and March 23, 2004. (*Id.*)   At the conclusion of all of these amendments, fourteen substantive claims were left for the Court to address.  The Court found in favor of plaintiffs on <u>four</u> of these claims, and in favor of defendants on <u>ten</u> of these claims.

Specifically, the Court found Avondale and its ordinance to be in violation of the First Amendment in that: (1) the ordinance

---

[1]   A complete history of this lengthy and tangled litigation may be found in the Court's March 31, 2005 Order [90], disposing of plaintiffs' fourth motion for summary judgment and defendants' cross-motion for the same.

2

contained an exemption from the standard sign setback requirements for seasonal displays and decorations; (2) the City was inconsistently enforcing § 5-376(e) of the ordinance (no flags with a commercial message) by allowing the flags of professional sports teams to fly, but enforcing the ban on commercial flags other than those of professional and college sports teams; (3) a sign marking the entrance to the "Condominium of Avondale Estates" constituted content-based discrimination because the City's prior approval of the sign came at a time that the City was otherwise banning such residential signs; and (4) the City was not applying the provisions of its sign ordinance equally in that enforcement officials had decided not to enforce the sign ordinance against any sign in place before their jobs began.

In contrast, the Court found no First Amendment violation in the City's: (1) size, height restrictions, and definition of real estate signs; (2) the number and location restrictions on yard sale signs; (3) height restrictions and definitions of "signs"; (4) bans on posting signs in the public rights of way; (5) the general sign setback provision; (6) the exemption for seasonal displays from height, number and size restrictions; (7) the definition of "commercial"; and (8) the historical marker commemorating the Gutzon Borglum house.  Further, the Court denied plaintiffs' Voting Rights

3

Act claim and rejected plaintiffs' separate claims under the Georgia Constitution. (*See id.*)

Based on the above rulings, plaintiffs move this Court for attorney's fees and expenses as prevailing parties under 42 U.S.C. § 1988 in the amount of $215,571.60.[2] (Mot. for Att'ys Fees and Expenses ("Fees Mot.") [99] at 1.)  Plaintiffs contend that they are entitled to attorney's fees and expenses for all of the work they completed on the various versions of the City's ordinance and associated motions for summary judgment regarding the same.[3]  In turn, defendants argue that plaintiffs are not prevailing parties and that plaintiffs' motion constitutes an impermissible attempt to collect under the "catalyst theory"--a once valid ground for recovery of attorney's fees that has since been overruled by the Supreme Court. (Defs.' Resp. to Pls.' Mot. for Att'ys Fees ("Fees Resp.") [101] at 9.) Defendants further argue that, if the Court does deem plaintiffs to be prevailing parties, then the Court should award either no fees or

---

[2]  This figure represents plaintiffs' request as of July 8, 2005.

[3]  Again, the Court ultimately reached a decision only on plaintiffs' <u>fourth</u> motion for summary judgment because as to each of the prior motions for summary judgment, the City amended its ordinance before the Court could consider the merits of the pending motions.  As the Court previously noted, "This unending amendment process has created a constantly moving target that has been burdensome for this Court and particularly for the plaintiffs." (Order [90] at 7-8.)

4

reduced attorney's fees to account for the *de minimis* result achieved by plaintiffs. (*Id.* at 17.)

As the Court will discuss in greater detail, *infra*, in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 604 (2001), the Supreme Court did overrule the "catalyst theory." Consequently, the Court's analysis and reasoning with regard to plaintiffs' recovery of attorney's fees and expenses for challenges to the ordinance as of March 2004 (whose merits the Court did address) is necessarily different from the Court's analysis and reasoning with regard to plaintiffs' recovery of attorney's fees and expenses for challenges to prior versions of the ordinance (whose merits the Court did not address). The Court will address each in turn.

**DISCUSSION**

**I.   Attorney's Fees Related to March 2004 Version of the Ordinance**

"A plaintiff must be a 'prevailing party' to recover an attorney's fee under § 1988." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In this circuit, to be considered a prevailing party for purposes of a § 1988 award of attorney's fees "there must be a court-ordered . . . 'material alteration of the legal relationship of the parties.'" *Smalbein v. City of Daytona Beach,* 353 F.3d 901, 904 (11th Cir. 2003)(citing *Buckhannon*, 532 U.S. at 604). This means there must be either "a situation where a party has been awarded by the

5

court at least some relief on the merits of his claim or . . . a judicial imprimatur on the change in the legal relationship between the parties." *Id.* at 905 (internal citation and quotation omitted). In this circuit, a party may even be considered "prevailing," without a judgment on the merits of the underlying claims or a requirement that the other party modify a policy, procedure, or practice because "all that is necessary" under *Buckhannon* is that "some relief be awarded by the court." *Id.* at 906-07 (deeming plaintiffs prevailing parties where plaintiffs settled their claims pursuant to an agreement that the district court then incorporated into its order of dismissal and over which it retained jurisdiction for the enforcement of its terms.).

Here, plaintiffs' attack on the March 2004 version of the City's ordinance and defendants' cross-motion on the same ended in summary judgment in plaintiffs' favor on four issues. Of course, the same litigation also ended in summary judgment in defendants' favor on ten issues. Based on this low number of "wins" vs. "losses," defendant argues that the few issues decided in plaintiffs' favor render the judgment in plaintiffs' favor nothing more than a technical victory, which constitutes insufficient support for prevailing party status. Defendants rely on *Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782 (1989), in support of its argument.

6

*Texas State* does hold that "a technical victory may be so insignificant . . . as to be insufficient to support prevailing party status," but the same decision also holds that, "[i]f the plaintiff has succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee award of some kind." *Id.* at 791-92 (internal citation and quotation omitted). *Texas State* also describes the threshold to fee eligibility as "generous." *Id.*

Thus, if one had to pick a winner in the last motion for summary judgment, that winner would be the defendants. Yet, as noted, the test for prevailing party status is not gauged the way one would judge a sporting event. Instead, the plaintiff begins the competition with a helpful handicap: the plaintiff doesn't have to win on all or most issues, but merely has to succeed on any significant issue. Plaintiffs' win on four out of fourteen challenges, though certainly limited, is not insignificant enough to render plaintiffs' win merely "technical." At the very least, plaintiffs' victory on the *de facto* "grandfather" approach to enforcement is significant in that it corrected defendants' inconsistent enforcement of the sign ordinance. By winning on these four challenges, plaintiffs were awarded "relief" by this Court, and crossed the statutory threshold to becoming a prevailing party. Crossing this threshold renders plaintiff eligible for a fee award,

7

and "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429 (internal citation and quotation omitted).

The effect of the low number of "wins" to "losses" is, however, a factor in the size of the award.  Stated differently, "the degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all." *Texas State*, 489 U.S. at 790.   Indeed, "[t]he most critical factor in determining the award of attorney's fees is the degree of success that the party obtained." *Mills v. Freeman*, 118 F. 3d 727, 733 (11th Cir. 1997)(citing *Hensley*, 461 U.S. at 436).

In this case, the Court must therefore consider plaintiffs' limited degree of success in fashioning its award of attorney's fees and expenses.  Indeed, three out of four of plaintiffs' wins were for relatively insignificant matters.   To wit, the Court's Order directing that the non-compliant "Condominium of Avondale Estates" sign either be removed or the ordinance reexamined is hardly a result that merited the five-plus years of litigation expended in this case. Similarly, the Court's Order directing that the City either allow <u>all</u> commercial flags to fly freely or instead start enforcing the ban on all commercial flags in residential areas, including the flags of professional sports teams, has effectively resulted in less flag

8

speech.[4]   Finally, the Court's decision striking down the exemption from setback requirements for seasonal displays and decorations is fairly trivial when viewed in light of the ordinance as a whole.

All that said, the Court ultimately concludes that plaintiffs are a prevailing party; and there is still a "public benefit [that] inures when a plaintiff prevails against a public body in civil rights litigation." *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1306 (11th Cir. 2001).   Because of this public benefit, the Court does intend to grant some award of attorney's fees and expenses for time spent by plaintiffs challenging the March 2004 version of the

---

[4]   To avoid imposing a differential burden upon speech because of its content (which the City was doing by neglecting to enforce its ordinance against the flags of professional sports teams while at the same time enforcing the ordinance against other commercial flags) the City elected to start uniformly enforcing its ban on commercial flags in residential areas.   In a May 2, 2005, letter to the City's residents, Mayor Jerry D. McCumber wrote, "[t]he Court ruled that Flags bearing a professional sports team or college logo cannot fly. They are considered a 'commercial' message . . . In order to comply with Judge Carnes' decision, the City is required to begin to enforce the issues discussed above.   Please take the time to remove any flags you have on your property displaying the logos or names of professional sports teams and colleges." (Resident Letter, attach. as Ex. D to Fees Mot.)

Of course the above is not an accurate characterization of the Court's Order.   Rather than ruling that flags bearing a professional sports team or college logo could not fly, the Court ordered that the City could no longer pick and choose between flags bearing commercial messages.   The Court instructed the City that it could either let all commercial flags fly or let none fly.   It is the City, and not this Court, that decided to let no commercial flags fly.   Regardless, the City's decision to let no commercial flags fly, while constitutional, has resulted in less speech.

9

City's ordinance.[5]  In order for the Court to do so, however, the Court needs plaintiffs to do the following.

First, plaintiffs need to separate out of their claimed time the time spent challenging the final version of the City's ordinance from the time spent challenging earlier versions.  Because the Court assumes that, at some point, plaintiffs' counsel knew the relevant law and that a new round of amendments to the ordinance did not require much additional legal research time, some of the time spent on legal research for earlier versions of the ordinance may fairly be attributed to plaintiffs' challenge to the final version.  As it now stands, all that is before the Court is a running bill for several attorneys from the start of this litigation to the present time. This running bill format does not allow the Court to fairly distinguish what time was spent on what round of challenges. Further, it would be helpful if plaintiffs made an attempt to apportion attorney's fees based on the work plaintiffs did on the parts of the ordinance on which it prevailed.  In other words, the Court would like to see how much time plaintiffs spent on the four claims they "won" versus how much time plaintiffs spent on the ten claims they "lost."

The Court recognizes that this may be a difficult, if not

---

[5] The Court will separately address, *infra*, plaintiffs' earlier challenges to now-defunct versions of the City's ordinance.

10

impossible, task to accomplish in any precise manner, but the plaintiffs should at least take a stab at suggesting to the Court some reduction of fees or methodology to account for plaintiffs' less than "excellent" results.[6] *See Villano*, 254 F.3d at 1306-08 (indicating that where a plaintiff has achieved less than "excellent" results the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount). At the very least, the Court intends to deduct, *in toto*, the hours expended by plaintiffs on their Georgia constitutional and Voting Rights Act claims, as plaintiffs were unsuccessful on these challenges and these two claims were distinct from plaintiffs' other challenges to the City's ordinance. Plaintiffs need to estimate what hours were expended on these two unsuccessful claims and make a corresponding reduction in hours.

## II.  Attorney's Fees for Challenges to Earlier Versions of the Ordinance

Defendants argue that the Supreme Court's overruling of the "catalyst theory" in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 604 (2001), precludes plaintiffs from recovering any attorney's fees or expenses for

---

[6]   "Determining whether a plaintiff obtained excellent results is a required element of a § 1988 legal analysis." Here, the Court concludes that plaintiffs obtained something less than excellent results. *See Villano*, 254 F.3d at 1308.

AO 72A
(Rev.8/82)

challenges made to earlier versions of the ordinance. (Fees Resp. at 8.)  Plaintiffs counter by arguing that the present case involves "unique circumstances" in that defendants' repeated amendments to the City's ordinance, which created a constantly moving target, was merely a tactic by defendants to moot the action before judgment to avoid paying attorney's fees. (Fees Mot. at 13-14.)  Because of defendants repeatedly amending the ordinance, plaintiffs urge this Court to consider plaintiffs' victory on the four challenges to the March 2004 version of the City's ordinance as the cumulative result of all of plaintiffs' earlier challenges. (*Id.* at 3.)  Plaintiffs maintain that they should be awarded attorney's fees and expenses for all of their work on all of the various versions of the City's ordinance because, as a result of the total litigation, residents of Avondale who were once barred from expressive activities on their private residential property, are now free to speak within constitutionally permissive bounds. (*Id.* at 4.)

Plaintiffs' argument sounds a lot like a catalyst argument. There is no question that, in *Buckhannon*, the Supreme Court threw out the "catalyst theory" as a basis for recovering attorney's fees under 42 U.S.C. § 1988.  However, the Court finds that *Buckhannon* does not squarely address the facts presented here.  *Buckhannon* did reject the catalyst theory of awarding § 1988 attorney's fees, but did so only for those situations where a party "failed to secure a judgment on

12

the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon*, 532 U.S. at 600. The basis for rejecting the catalyst theory in *Buckhannon* was that "[i]t allows an award where there is no judicially sanctioned change in the legal relationship of the parties." *Id.* at 605.

In *Buckhannon*, the actual case was dismissed as moot and then plaintiff moved for attorney's fees--consequently, there was never a judgment on the merits. The only result from the litigation in *Buckhannon* was a voluntary change in the defendant's conduct. This is not the situation presented here. In this case, in the end, there was a judgment on the merits that was at least partially in plaintiffs' favor.

Stated differently, *Buckhannon* clearly stands for the proposition that a party who, in the end, fails to get a judgment on the merits or a court-ordered consent decree, is out of luck and is not going to be saved by the catalyst theory. *Buckhannon* does not, however, directly speak to what happens when there is challenge, then a voluntary change by the defendant, then another challenge, then another voluntary change, and so forth, until ultimately, a judgment on the merits is entered in part for the plaintiff. Accordingly, it is not at all clear to this Court how the Supreme Court would apply *Buckhannon* in a case such as this, where the defendant city elected

13

to repeatedly repeal its ordinance in response to plaintiffs' litigation attacks, but where, ultimately, plaintiff won on a small portion of the last iteration of the ordinance.

In *Action on Smoking and Health v. Civil Aeronautics Bd.*, 724 F.2d 211 (D.C. Cir. 1984), a pre-*Buckhannon* case from the United States District Court for the District of Columbia, the court rejected precisely the argument that defendants proffer here. Namely, the Court held that a plaintiff should not be barred from recovering attorney's fees for work done on a challenge to an earlier version of a regulation and was only a prevailing party on the later regulation. (The earlier challenge had not been resolved because the court refrained from issuing a ruling on the earlier version of the regulation upon notice that it was being voluntarily changed.) The *Action* court reasoned:

> In this case, however, the entire litigation centered on a set of common issues. Although [defendant] put forward a plethora of more-or-less stringent regulations and proposals, [plaintiff] maintained a consistent argumentative theme . . . As [defendant] concedes, the adoption of [the current regulation] was the culmination of [a process that started with the challenge to the first regulation]. Both the [earlier and later] challenges involved a common core of facts and were based on related legal theories. These two claims, which the court subsequently consolidated into a single appeal, were part of a continuous process of regulation on a single topic. They are all part and parcel of a single matter. Hence, we decline to disallow categorically the hours expended on the [earlier regulation].

*Id.* at 216 (internal citation and quotation omitted).

14

Though not binding and though pre-*Buckhannon*, the reasoning of *Action* has some resonance here. Moreover, all four of the issues on which plaintiffs ultimately prevailed are issues which plaintiffs had been raising since the beginning of this litigation. Thus, while, pursuant to *Buckhannon*, plaintiffs should arguably not recover for any changes to earlier ordinances that plaintiffs advocated for, but defendants made voluntarily, the Court also concludes that, as to the four claims on which plaintiffs were ultimately successful, there has been a common core of facts throughout all of the litigation in this case for which plaintiffs should recover something, since some of the successful advocacy in the last round of litigation was merely a repeat of earlier advocacy made in plaintiffs' challenges to earlier versions of the ordinance. Also, while, to some extent, defendants can be commended for continually redrafting the City's ordinance in an effort to respond to plaintiffs' complaints, the constant redrafting did create unnecessary expense for the plaintiffs. Though not compensating plaintiffs for any changes to earlier ordinances that plaintiffs may have advocated, but that defendants made voluntarily, an award of attorney's fees should give some recognition to the unique reality of this case by awarding some fees for litigation done on prior versions of the ordinance.

In short, the Court believes that some award of fees for prior work is appropriate. As to the precise amount, for the reasons

15

stated, the Court does not believe that an award for all of plaintiffs' work on all of the various versions of the ordinance is appropriate. The Court directs plaintiffs to propose some methodology for carving out fees attributable to earlier challenges on the four claims on which plaintiffs ultimately succeeded from fees attributable to earlier challenges that were effectively mooted by defendants' voluntary changes to the City's ordinance. To the extent that a precise approach is not feasible, plaintiffs should propose some rational methodology to support an award for these earlier fees.

## III. Conclusion and Instructions on Refiling

Consistent with all of the above, the Court **DENIES as moot** Plaintiffs' Preliminary Motion for Reasonable Attorneys' Fees and Costs [97] AND **DENIES without prejudice** plaintiffs' Motion for Attorneys' Fees and Expenses [99]. Plaintiffs have **thirty (30) days** from the date of this Order to refile a renewed motion for attorney's fees consistent with the Court's instructions delineated, *supra*. Defendants will then have **thirty (30) days** from the filing of plaintiffs' motion to file its response. If they elect to do so, plaintiffs will have **ten (10) days** to reply to defendants' responsive pleading.

16

SO ORDERED, this 29th day of March, 2006.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)