IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KATHARINE KENNEDY, DANIEL
WAGGONER, and ANNE KEATING,

    Plaintiffs,

v.

AVONDALE ESTATES, GEORGIA, a
Municipal Corporation,

    Defendant.

CIVIL ACTION NO.
1:00-CV-1847-JEC

## O R D E R  &  O P I N I O N

This case is presently before the Court on Plaintiffs' Renewed Motion for Reasonable Attorneys' Fees and Costs [107]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Plaintiffs' Renewed Motion for Reasonable Attorneys' Fees and Costs [107] should be **GRANTED.**

### BACKGROUND

Plaintiffs seek attorneys' fees and costs because they ultimately prevailed on a few challenges that they made to the City of Avondale Estates' ("Avondale") sign ordinance.[1] In its March 29, 2006 Order [106] on Plaintiffs' Preliminary Motion for Reasonable

---

[1] A complete history of this lengthy and tangled litigation may be found in the Court's March 31, 2005 Order [90], disposing of plaintiffs' fourth motion for summary judgment and defendant's cross-motion for the same.

Attorneys' Fees and Costs [97] and Plaintiffs' Motion for Attorneys' Fees and Expenses [99], the Court indicated that there would be some award of attorney's fees and expenses in this case, but drew a distinction between its analysis and reasoning with regard to plaintiffs' recovery of attorney's fees and expenses for challenges to Avondale's ordinance as of March 2004 (whose merits the Court did address) and the Court's analysis and reasoning with regard to plaintiffs' recovery of attorney's fees and expenses for challenges to prior versions of the ordinance (whose merits the Court did not address). (*See* Order [106] at 5.)

With regard to attorney's fees related to the March 2004 version of Avondale's ordinance, the Court recognized that plaintiffs' win on four out of fourteen challenges, though certainly limited, was not insignificant enough to render plaintiffs' win merely "technical."[2] (*Id.* at 7.) To the contrary, the Court recognized that, "[b]y winning on these four challenges, plaintiffs were awarded 'relief' by this Court, and crossed the statutory threshold to becoming a prevailing party."[3] (*Id.*)  The Court qualified this statement, however, by

---

[2] In *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989), the Supreme Court held that "a technical victory may be so insignificant . . . as to be insufficient to support prevailing party status."

[3] "A plaintiff must be a 'prevailing party' to recover an attorney's fee under § 1988." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

2

recognizing that the low number of "wins" to "losses" would be a factor in the size of the award plaintiffs would be granted.[4] (*Id.* at 8.)  The Court went on to note that three out of four of plaintiffs' wins were for relatively insignificant matters, which, in at least one instance (commercial flags), ultimately resulted in less speech overall. (*Id.* at 8-9.)

In recognition of the above, the Court instructed plaintiffs to separate out of their claimed time the time spent challenging the final version of the City's ordinance (the March 2004 version) from the time spent challenging earlier versions. (*Id.* at 10.)  The Court also asked plaintiffs to make an attempt to apportion attorney's fees based on the work plaintiffs did on the parts of the ordinance on which it prevailed.  The Court indicated that it would like to see how much time plaintiffs spent on the four claims they "won" versus how much time plaintiffs spent on the ten claims they "lost." (*Id.* at 10.)  The Court did note that, because at some point plaintiffs' counsel must have known the relevant law such that a new round of amendments to the ordinance did not require much additional legal research time, some of the time spent on legal research for earlier versions of the ordinance may fairly be attributed to plaintiffs'

---

[4] "[T]he degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all." *Texas State*, 489 U.S. at 790.

3

challenge to the final version. (*Id.*) Finally, the Court instructed plaintiffs to deduct, *in toto*, the hours spent by plaintiffs on their entirely unsuccessful Georgia constitutional and Voting Rights Act claims. Overall, the Court concluded that there would need to be some reduction of fees or methodology to account for plaintiffs' less than "excellent" results.[5]

With regard to attorney's fees related to the earlier versions of Avondale's ordinance, in its March 29th Order the Court explained its position that the Supreme Court's overruling of the "catalyst theory" in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 604 (2001), does not squarely address the facts presented in this case. (Order [106] at 12.) More specifically, the Court recognized that *Buckhannon* rejected the catalyst theory of awarding § 1988 attorney's fees, but only for those situations where a party failed to secure a judgment on the merits or a court-ordered consent decree. The Court noted that, in *Buckhannon*, the actual case was dismissed as moot before plaintiff moved for attorney's fees so that there was never a judgment on the merits, whereas, in this case, there ultimately was a judgment on the merits that was at least partially in plaintiffs' favor. The Court

---

[5] "Determining whether a plaintiff obtained excellent results is a required element of a § 1988 legal analysis." *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1306 (11th Cir. 2001).

4

said:

> *Buckhannon* clearly stands for the proposition that a party who, in the end, fails to get a judgment on the merits or a court-ordered consent decree, is out of luck and is not going to be saved by the catalyst theory. *Buckhannon* does not, however, directly speak to what happens when there is challenge, then a voluntary change by the defendant, then another challenge, then another voluntary change, and so forth, until ultimately, a judgment on the merits is entered in part for the plaintiff. Accordingly, it is not at all clear to this Court how the Supreme Court would apply *Buckhannon* in a case such as this, where the defendant city elected to repeatedly repeal its ordinance in response to plaintiffs' litigation attacks, but where, ultimately, plaintiff won on a small portion of the last iteration of the ordinance.

(*Id.* at 13-14.)

The Court then went on to discuss *Action on Smoking and Health v. Civil Aeronautics Bd.*, 724 F.2d 211 (D.C. Cir. 1984), a pre-*Buckhannon* case from the United States District Court for the District of Columbia, a case which addressed facts closely analogous to those presented here. The *Action* court concluded that a plaintiff should not be categorically barred from recovering attorney's fees for work done on a challenge to an earlier version of a regulation even though only a prevailing party on the later regulation where the entire litigation centered on a set of common issues. (*See* Order [106] at 14)(discussing *Action*).

In the end, the Court concluded that, while pursuant to *Buckhannon*, plaintiffs should arguably not recover for any changes to earlier ordinances that plaintiffs advocated for, but defendants made

5

voluntarily, that, as to the four claims on which plaintiffs were ultimately successful, there has been a common core of facts throughout all of the litigation in this case for which plaintiffs should recover something, since some of the successful advocacy in the last litigation was merely a repeat of earlier advocacy presented in plaintiffs' challenges to earlier versions of the ordinance. (*Id.* at 15.) The Court noted, "[t]hough not compensating plaintiffs for any changes to earlier ordinances that plaintiffs may have advocated, but that defendants made voluntarily, an award of attorney's fees should give some recognition to the unique reality of this case by awarding some fees for litigation done on prior versions of the ordinance." (*Id.*) The Court then directed plaintiffs to propose some methodology for carving out fees attributable to earlier challenges on the four claims on which plaintiffs ultimately succeeded from fees attributable to earlier challenges that were effectively mooted by defendant's voluntary changes to the City's ordinance. (*Id.* at 16.)

Ultimately, the Court instructed plaintiffs to refile a renewed motion for attorney's fees consistent with the instructions set forth in the Court's March 29, 2006 Order. This case is now before the Court on that renewed motion.

### DISCUSSION

In response to plaintiffs' renewed motion for attorney's fees, defendant essentially asks the Court to revisit plaintiffs'

6

prevailing party status. For all of the reasons articulated in the Court's March 29, 2006 Order, the Court maintains its conclusion that plaintiffs are a prevailing party entitled to some award of attorney's fees and expenses.[6] (Order [106] at 9.) "The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances. Accordingly, a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)(internal citations and quotations omitted). At the same time, though plaintiffs argue for it in their renewed motion for attorney's fees, the Court has not before, and does not today, conclude that defendant acted in bad faith during the course of this litigation.[7] The issue now before the Court is the precise amount of attorney's fees and expenses to be awarded.

---

[6] There is a "public benefit [that] inures when a plaintiff prevails against a public body in civil rights litigation." *Villano*, 254 F.3d at 1306.

[7] In other words, the Court flatly rejects as not supported by the facts of this case, plaintiffs' alternative theory of recovering attorney's fees and expenses under 28 U.S.C. § 1927. Under § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (2006). A hotly-contested, drawn out debate on the issues between parties on opposite sides of a piece of litigation, like that presented here, does not, without more, constitute bad faith.

7

Importantly, the prevailing party standard, which holds that plaintiffs may be considered prevailing parties for purposes of attorney's fees if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit, "is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.'" *Id.* at 433.

## I. Calculation of the Lodestar

"[T]he starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours <u>reasonably</u> expended by a <u>reasonable</u> hourly rate." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)(emphasis added). The resulting total is known as the "lodestar." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994).

### A. Reasonable Hourly Rate

"The first step in the computation of the lodestar is determining the reasonable hourly rate." *Loranger,* 10 F.3d at 781. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman,* 836 F.2d at 1299. While the party seeking attorney's fees bears the burden of producing satisfactory evidence that the rate requested is in line

8

with prevailing market rates, the Court is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees. *Loranger,* 10 F.3d at 781.

In this case, plaintiffs ask the Court to award an hourly rate of $335 for lead counsel Neil Bradley; $285 for co-counsel Marcia Borowski; $325 for co-counsel Gerald Weber; and $250 for lead counsel-on-fees Elizabeth Littrell. The Court has reviewed affidavits submitted by each of the above attorneys, as well as the affidavit of practicing civil rights and employment attorney Edward D. Buckley, offered in support of the reasonableness of the above hourly rates. Given the education and experience of each of the above attorneys, as well as their positions of leadership within the legal community, and the complex constitutional issues involved in this case, the Court finds the above requested rates to be reasonable. The Court further concludes that the rates requested reflect the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. Having determined the reasonable hourly rate for all parties at issue, the Court will now determine the number of hours reasonably expended for which plaintiffs are entitled to recover.

**B. Reasonable Hours Expended**

In all cases, the total number of hours reasonably expended

9

should be free of excessive, redundant, or otherwise unnecessary hours with time spent on discrete and unsuccessful claims deducted from the total. *Norman*, 836 F.2d at 1301-02. Originally, as of July 8, 2005, plaintiffs had requested an award of attorney's fees and expenses in the amount of $215,571.60. (Order [160] at 4.) That figure has since risen to a non-reduced request for an award of attorney's fees in the amount of $230,981.25. *See* TABLE B, *infra*. In light of the Court's March 29, 2006 instructions, attorneys Bradley, Borowski, and Weber have now made reductions to their hours. Attorney Littrell did not reduce her hours, apparently because her time was spent only on the fee petitions filed after the Court's March 31, 2005 Order granting plaintiffs' motion for partial summary judgment. Plaintiffs contend that they are entitled to attorney's fees under § 1988 for all time spent advocating for the recovery of fees and expenses. The total "reduced request" plaintiffs now ask for is $175,955.75. The hourly breakdown of this request is set forth in the following table presented by plaintiffs in their renewed motion for attorney's fees.[8] (Br. in Supp. of Pls.' Renewed Mot. for Reasonable Attorneys' Fees and Costs ("Renewed Fees") [107] at Summary of Attorneys' Fees and Costs ("Summary").)

---

[8] The Court has added to the figures presented by plaintiffs in the table included in their renewed motion for attorney's fees, the hours spent by plaintiffs on their reply in support of their renewed motion for attorney's fees.

10

**TABLE A**

| Attorney | Original Request | Reduction | Time Spent on Renewed Motion for Attorney's Fees & Reply | Reduced Request |
|---|---|---|---|---|
| Bradley | 463.6 | 136.9 | 12.7 + 2.3 | 341.7 |
| Borowski | 100.65 | 17.9 | 0 | 82.75 |
| Weber | 65 | 12.5 | 6.3 + 0.9 | 59.7 |
| Littrell | 58.1 | 0 | 8.6 + 7.3 | 74.0 |

Given the above reduced hours, plaintiffs' total reduced fee request is, $175,955.75, as set forth in the following table presented by plaintiffs in their renewed motions for attorney's fees.[9]

**TABLE B**

| Attorney | Hourly Rate | Fee Requested | Reduced Request |
|---|---|---|---|
| Bradley | $335 | $160,331.00 | $114,469.50 |
| Borowski | $285 | $28,685.25 | $23,583.75 |
| Weber | $325 | $23,465.00 | $19,402.50 |
| Littrell | $250 | $18,500.00 | $18,500.00 |
| Total | | $230,981.25 | $175,955.75 |

Defendant has not challenged the hours spent by plaintiffs in bringing their fee petitions, "or at least not with such specificity as to alert the Court that a reduction is warranted." *Webster*

---

[9] As in Table A, in Table B the Court has added to the figures presented by plaintiffs in the table included in their renewed motion for attorney's fees the hours spent by plaintiffs on their reply in support of their renewed motions for attorney's fees.

11

*Greenthumb Co. v. Fulton County*, 112 F. Supp. 2d 1339, 1368 (N.D. Ga. 2000)(Thrash, J.). Still, though the Court concludes, generally, that plaintiffs are entitled to the time spent preparing fee petitions, the Court also concludes that the number of hours requested, 74.0, is a somewhat excessive amount of time to have been spent on two motions for attorney's fees and expenses, and associated reply motions.[10] However, the issue of attorney's fees in this case has been complicated by the distinction between plaintiffs' recovery of attorney's fees and expenses for challenges to Avondale's ordinance as of March 2004 (whose merits the Court did address) and the Court's analysis and reasoning with regard to plaintiffs' recovery of attorney's fees and expenses for challenges to prior versions of the ordinance (whose merits the Court did not address). The *Buckhannon* issue also complicated plaintiffs' fee petitions and associated replies. In the end, having reviewed attorney Littrell's time entries, the Court concludes that **55 hours** is a reasonable amount of time to have been spent on the fee petitions entered in this case.

Turning to the work done by attorneys Bradley, Borowski, and Weber, the Court concludes that each of the above made a fair effort

---

[10] The substantive fee petitions drafted by attorney Littrell include Motion for Attorneys Fees and Expenses [99] and Plaintiffs' Renewed Motion for Reasonable Attorneys' Fees and Costs [107].

12

to implement the Court's instruction that all hours expended by plaintiffs on their Georgia constitutional and Voting Rights Act claims be deducted *in toto*. Attorney Bradley deducted 28.1 hours connected to plaintiffs' Voting Rights Act and state constitutional claims. (Renewed Fees at Bradley Decl. at ¶ 4.)

Attorney Borowski states that she spent very little time on plaintiffs' Voting Rights Act and state constitutional claims, because most of her time was spent dealing with the litigation generally--reviewing documents, planning and participating in discovery, planning and participating in settlement discussions--and not addressing any specific issue. (Renewed Fees at Borowski Decl. at ¶ 3.) To account for any time she may have spent discussing the Voting Rights Act or state constitutional claims with co-counsel, Borowski has made a ten percent reduction from the 7.4 hours she spent in communications with co-counsel for a .75 hour reduction. (*Id.* at ¶ 4.) Borowski also deducted 10.9 hours for time spent reviewing dismissals after amendments, work on the unsuccessful interim fee petition, work related to dropping plaintiffs, and work related to state claims. (*Id.* at ¶ 5.)

Attorney Weber did not total the hours he deducted by sub-category, but states in his affidavit, "I eliminated all segregable time spent on Voting Rights and State Constitutional Claims." (Renewed Fees at Weber Decl. at ¶ 2.) In addition to the time

13

deducted for the Voting Rights Act and Georgia constitutional claims, as evidenced by Table A above, Bradley, Borowski, and Weber all made additional, more than trivial, deductions in their hours requested in an attempt to follow the Court's instructions to account for what the Court described as less than "excellent" results. (*See* Order [106] at 11.) What plaintiffs have been unable to do, however, is propose any real "<u>methodology</u> for carving out fees attributable to earlier challenges on the four claims on which plaintiffs ultimately succeeded from fees attributable to earlier challenges that were effectively mooted by defendant's voluntary changes to the City's ordinance." (*Id.* at 16)(emphasis added).

As the Court previously indicated, some of plaintiffs' earlier work should be compensated in that there has been a common core of facts throughout all of the litigation and some of the successful advocacy in the last round of litigation was merely a repeat of earlier advocacy made in plaintiffs' challenges to earlier versions of the ordinance. (*See id.* at 15.) However, at this juncture, as evidenced by the content of their renewed motion for attorney's fees and costs, plaintiffs are still wed to their position that the fourteen substantive claims the Court ultimately addressed (ten of which plaintiffs lost) were all so intricately connected so as to make the time spent on one claim unseverable from time spent on other claims. (*See* Renewed Fees at 2, 8.) Plaintiffs view all of the free

14

expression and equal protection claims they advanced as part of one central claim. The Court disagrees and concludes that while there has been a common core of facts throughout all of this litigation for which plaintiffs should recover something, each of the fourteen claims, at least to some degree, also stands alone. In other words, plaintiffs have made some reductions in their hours requested, but not enough.

In awarding fees under 42 U.S.C. § 1988, the District Court must "consider the relationship between the extent of success and the amount of the fee award." *Hensley*, 461 U.S. at 439. The Supreme Court has further directed, "that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988 . . . where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 440. Indeed, "[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* As to the mechanics of instituting the above, the Supreme Court has instructed, "[t]here is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this

15

equitable judgment." *Id.* at 436-37.

Here, again, three out of four of plaintiffs' wins were for relatively insignificant matters. (Order [106] at 8.) Further, though no fault of plaintiffs, one of these "wins" ultimately resulted in less speech overall.[11] (*See id.* at 8-9.) Still, at the very least, plaintiffs' victory on the City's *de facto* approach to sign enforcement whereby the City's enforcement officials had decided not to enforce the sign ordinance against any sign in place before their jobs began, is significant in that it corrected defendant's inconsistent enforcement of the sign ordinance. (*See id.* at 7.) The Court considers all of the above, and the entire history of this litigation, as it remains cognizant of the fact that, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434; *see also Atlanta Journal and Constitution v. City of Atlanta*, 442 F.3d 1283, 1289 (11th Cir. 2006)(supporting district court's approach to ruling on

---

[11] In its final order addressing the substantive constitutional issues in this case, the Court directed that the City either allow all commercial flags to fly freely or instead start enforcing the ban on all commercial flags in residential areas, including the flags of professional sports teams. The City elected to enact a ban on all commercial flags in residential areas, hence, there is less overall speech in the City. (*See* Order [106] at 8-9.)

16

motion for attorney's fees where step one was determination that plaintiff had "prevailed"; step two was a calculation of "lodestar"; and step three was a downward adjustment to lodestar to account for plaintiff's limited success on claims).

Defendant proposes that the Court reduce plaintiffs' attorney's fees and expenses by awarding plaintiffs just 4/14 of what they ask for, or 29%. Defs.' Mem. of Law in Resp. to Pls.' Renewed Motion for Attorney's Fee ("Resp. Renewed Fees") at 14-15.) Of course, the Court will not adopt this approach because it runs directly contrary to the Supreme Court's rejection of mathematical approaches to determining attorney's fees and expenses whereby the courts merely compare the total number of issues in the case with those actually prevailed upon. *See Hensley*, 461 U.S. at 435 n. 11. Instead, in determining a reasonable amount of attorney's fees to be awarded, the Court considers the five-plus years of litigation expended in this case, the public benefit obtained by plaintiffs, the significant number of challenges brought by plaintiffs that were ultimately lost, and the unique circumstances of this case whereby the City's ordinance became a moving target creating unnecessary expense for the plaintiffs.[12]

---

[12] The Court delineates all that it has considered in reaching its decision today in order to comply with the Supreme Court's directive that: "the district court should make clear that it has considered the relationship between the amount of the fee awarded and

Having done so, accounting for the limited success achieved, but still recognizing the public benefit that has inured, the Court rejects the $175,955.75 figure currently sought by plaintiffs for attorney's fees as too high for the degree of success obtained. The Court exercises its equitable judgment to reduce the amount of attorney's fees awarded in this case to **$140,000.00**. Having determined that Attorney Littrell reasonably spent 55 hours of time on fee petitions at an hourly rate of $250 for a total of $13,750.00, the Court is essentially awarding $126,250.00 for the non-fee related, substantive work done on this case. This works out to somewhere around $21,041.67 per year for each of the six years since this litigation was first commenced in July of 2000.

The Court considers the above award of attorney's fees to be reasonable, given the limited success obtained in this case. Further, the Court finds plaintiffs' request for an award of expenses in the amount of **$2,329.80** to be reasonable in light of the length and complexity of this litigation. Accordingly, pursuant to 42 U.S.C. § 1988, the Court makes a total award of attorney's fees and expenses in this case of **$142,329.80**. In doing so, the Court believes that it has made no award supported conceptually, or in fact, by the "catalyst theory," which was rejected by the Supreme

---

the results obtained." *Hensley*, 461 U.S. at 437.

Court in *Buckhannon*.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Renewed Motion for Reasonable Attorneys' Fees and Costs [107]. The Court directs the Clerk to issue a judgment conforming to the language of the calculations contained in the section. Plaintiff shall be awarded **$140,000.00** in attorney's fees and **$2,329.80** in expenses and costs.

SO ORDERED, this 15 day of March, 2007.

_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)